[Civ. No. 6402.   Third Appellate District.—November 22, 1940.]

WINIFRED DUNN et al., Respondents, v. SPARKS STRIN-
GER, Appellant.

Spencer Austrian for Appellant.

Cummins, McMillan & Cummins and Cummins & Cummins for Respondent.

THOMPSON, Acting P. J.—This is a suit to rescind a contract of association of the respective parties in this suit to produce and market for radio broadcasting a series of stories under the title of ''The Unbelievable'' and a serial story ''The Secret City'', and to obtain an accounting of the proceeds derived therefrom. The court adopted findings and rendered a judgment against the defendant, cancelling the contract and determining that neither party is indebted to the other. The plaintiffs were awarded their costs of suit. From that judgment the defendant has appealed.

The complaint alleges that on December 30, 1936, the respective parties to this suit executed a written contract of association, a copy of which is attached as an exhibit thereto, by the terms of which they agreed to collaborate in a joint adventure in writing and producing serial stories to be copyrighted and sold for radio broadcasting and publication under the title of ''The Unbelievable'' and ''The Secret City''; that the defendant, Sparks Stringer, falsely represented that he was possessed of unlimited authentic facts and material and that he would promptly furnish plaintiffs historical facts and real incidents suitably outlined with respect to the plots, characters and dialogues involved to enable the plaintiffs to edit, correct, write, dramatize, complete, copyright and market the stories; that the said representations were false and fraudulent, as the defendant then knew, and upon the contrary that the defendant owned no such facts or material and that he failed to obtain or supply them to plaintiffs, who signed the contract in reliance upon the defendant's representations; that on July 26, 1937, the plaintiffs notified the defendant in writing of their cancellation of the contract, offering to restore to him everything of value received by them, which the defendant subsequently refused. The complaint asks for a rescission of the contract and for restoration to the plaintiffs of their original *status quo,* together with such further relief as may be meet in the premises.

The defendant answered the complaint, admitting the execution of the contract, but denying all other material allegations

of the pleading. He also filed a cross-complaint, reciting that thirty serial stories, under the title "The Unbelievable" had been prepared and sold by the parties to the contract for the sum of $8,100, payable at the rate of $270 for each story when it was accepted and used; that the sum of $5,193.18 had been received on that account and divided between the parties in the proportions designated by the contract, but that the remaining sum of $2,906.82 had not been distributed and on the contrary that the last-mentioned sum was wrongfully appropriated by the cross-defendants; that the proportions of said sum to which the respective parties are entitled according to the provisions of the contract, is 45 per cent thereof to the cross-complainant, Sparks Stringer, a similar amount to the cross-defendant, Winifred Dunn, and the remaining 10 per cent to the cross-defendant, Harold Swartz; that the cross-defendants breached the contract and refused to perform its terms and the cross-complainant is entitled to his proportion of the undistributed money on hand. The cross-complaint thereupon demanded an accounting, a judgment for the amount of money due to plaintiff and cancellation of the contract. Plaintiffs answered the cross-complaint, denying the material allegations thereof, except that it was admitted that $8,100 was received from the sales of episodes, but asserted that the entire sum had been disbursed in accordance with the provisions of the contract and they then prayed for judgment accordingly.

The court adopted findings adverse to the defendant and cross-complainant on every material issue. It was determined that the defendant procured the execution of the contract in question by false and fraudulent representations, reciting specific acts and declarations constituting that fraud, and the court thereupon rescinded the agreement on that account. The court found that the defendant and cross-complainant failed to fulfill his contract, and on the contrary that the plaintiffs and cross-defendants received "nothing of value . . . under the contract". ▮ The court further found, as a result of the accounting which was held at the request of the cross-complainant, that plaintiffs were required to and did expend large sums of money, authorized by the terms of the contract, because of the defendant's failure to comply therewith, amounting in the aggregate to more than the undistributed funds to which the defendant would otherwise be

entitled under the contract, and that he is therefore entitled to recover nothing from the plaintiffs in this action. The court specifically found that the plaintiffs necessarily expended, on account of the defendant's breach of contract, money for items aggregating the sum of $1335.29, which exceeds the proportion of the undistributed funds to which the defendant would otherwise be entitled. Those several items were properly credited to the account of the plaintiffs.

■ The findings and judgment are adequately supported by the evidence in spite of the existing conflict of testimony. The record consists of a thousand pages of evidence and a large number of exhibits. It would be an idle task to attempt to review the record merely to prove there is substantial testimony to support the findings and judgment.

■ There is evidence to show that the defendant procured the contract with the plaintiffs by means of fraud and that he breached that agreement by failing to perform its terms. While the defendant did furnish plaintiffs with certain manuscripts of episodes for broadcasting, they did not conform to the requirements of the contract and they were rejected by the proposed purchasers because they were plagiaristic and not founded on factual incidents. The material was not supplied by the defendant within the time specified and it was not presented in suitable form to render it marketable. The plaintiffs were therefore required to compromise a demand for damages claimed by Charles Fort, the author of books from which the defendant plagiarized and appropriated many plots and incidents incorporated in his proposed stories. His failure to furnish plaintiffs with material for episodes within a reasonable time required them to make independent research and originally to prepare their manuscripts at a considerable expense of time and money. The plaintiffs were therefore justified in giving to the defendant notice of rescission of the contract. The agreement was not void, but merely voidable. ■ The proceeds derived from the sales of serial stories were received prior to the notice of cancellation of the contract. They were properly included in the accounting demanded by the defendant in his cross-complaint.

The plaintiffs were authorized to rescind the contract in the present case for failure of consideration and because it was procured by fraudulent representations. (Secs. 1689

and 3406, Civil Code.) ■ When a court actually acquires jurisdiction in a suit to rescind a contract on the ground of fraud, under a prayer for general relief, and when a cross-complaint affirmatively demands an accounting, the court may decree an accounting and render a money judgment against the defendant incidental to the rescission of the contract to maintain the *status quo* of the respective parties. (*Stewart v. Crowley,* 213 Cal. 694, 700 [3 Pac. (2d) 562] ; 12 C. J. S. 1083, sec. 79 (a) ; 4 Cal. Jur. 797, sec. 29; 9 Am. Jur. 402, sec. 65.) In 12 C. J. S., *supra,* it is said in that regard:

"On a bill for rescission, *an accounting may be ordered* in a proper case, even though the bill fails as to the rescission. . . .

"In accordance with the principle that the parties will be given complete relief, whether equitable or legal in nature, it has been held that the court may, in a proper case, award complainant a judgment for money damages."

In the Stewart case, *supra,* the judgment was affirmed on appeal. The decree in that case, determined that the contract in question should be cancelled, and directed judgment for $2,500 against the appellant. It was contended the court had no jurisdiction in a suit for rescission of a contract to also award a money judgment. The court said:

"Appellant likewise contends that the trial court committed error in decreeing rescission and in giving a $2500.00 judgment against him in the same action, on the ground that rescission and 'damages' cannot be granted in the same action. The trial court in its judgment made the rescission of the lease conditional upon respondents paying Hudson the $2500.00 he had paid Crowley for the lease, and decreed that Crowley must reimburse the respondents for this outlay. The judgment is a correct and proper one, and in accordance with the principle that in such actions the court shall do complete equity between the parties. It is well settled that in such actions the court may grant any monetary relief necessary to do complete equity between the parties."

In the present case, upon the specific demand of the defendant in his cross-complaint for an accounting, the court merely held that all money derived from sales of the serial stories had been properly distributed between the respective parties, except the sum of $1313.39 which was paid by the plaintiffs, pursuant to the terms of the contract for necessary expenses

incurred on account of defendant's failure to perform the contract on his part. The court therefore properly held, as a result of that accounting, that no money was due to the defendant from the plaintiffs and cross-defendants. ■ The defendant may not complain of that portion of the decree which determines the result of the accounting. The accounting was sought by the cross-complaint of the defendant. The case was tried on the theory that a settlement of the proceeds from the sales of the stories involved in the contract was mutually submitted to the court by consent of the parties as an incident to the suit for rescission.

The appellant asserts, for the first time on appeal, that the complaint fails to state a cause of action for rescission of the contract because it does not specifically allege that the plaintiffs were pecuniarily damaged by the fraud or as a result of the breach of contract. There is no merit in that contention. The complaint specifically charges that the defendant falsely represented that he was possessed of unlimited material suitable for use in the serial stories and that he was able to and would furnish valuable personal service in preparing them; that he "failed and refused . . . to supply said materials and to co-operate with these plaintiffs as provided by the terms of said contract," and that "his services under the contract were valueless". No demurrer to the complaint was filed. ■ While it is true that ordinarily fraud without resulting injury will not afford relief, in cases of this class, it is not necessary to plead or prove pecuniary damages as a result of the fraud and breach of contract. It is sufficient to show that substantial *injury or prejudice* has resulted from the fraud and breach of contract. (*Spreckels* v. *Gorrill,* 152 Cal. 383 [92 Pac. 1011] ; *Menefee* v. *Oxnam,* 42 Cal. App. 81, 83 [183 Pac. 379].) In the Spreckels case, *supra,* which was a suit for rescission of a contract creating a joint adventure similar to the transaction which is involved in this case, the court said, "The fraud is the essential thing; the precise amount of damage being of secondary importance." In that case the defendant also contended that the complaint failed to state a cause of action, just as the appellant claims a lack of an allegation of damages in the present case, because no *pecuniary* loss was specifically alleged as a result of the fraud. The court said in that regard:

"It is also claimed that the complaint is insufficient because of the absence of any showing therein that any pecuniary damages was caused by the fraud. It is true that there is no express allegation that plaintiff suffered pecuniary damage therefrom, but in cases of this character this is not necessary. That fraud which has produced, and will produce, no *injury* will not justify a rescission, nor support an action either for rescission or damages, is an established principle of law and equity. But there is no rule that the injury must be of such a nature that it can be accurately measured in money. And we know of no rule of pleading which, in an action based upon a rescission between the parties or seeking to enforce such rescission, requires a statement that the fraud complained of had caused or would cause a specific amount of damages."

■ The defendant waived his right to object to the insufficiency of the complaint for the omission to state specifically that the plaintiffs were *pecuniarily* damaged, by his failure to demur to the pleading. In the Spreckels case, *supra,* it is said in that regard:

"If the defendant desired a more explicit statement showing the amount of the pecuniary loss he should have presented the objection by means of a demurrer for uncertainty in that particular."

It has been frequently held in suits for rescission of a contract on the ground of fraud, between the parties thereto, that the instrument may be cancelled even in the absence of a showing of actual pecuniary loss. (*Munson* v. *Fishburn,* 183 Cal. 206, 217 [190 Pac. 808]; *Rodriguez* v. *Bulotti,* 123 Cal. App. 264, 266 [11 Pac. (2d) 9]; *Aycock* v. *Carr,* 105 Cal. App. 675 [288 Pac. 448]; *Davis* v. *Butler,* 154 Cal. 623 [98 Pac. 1047]; *Denovan* v. *Golden State Woolen Mills,* 104 Cal. App. 504 [286 Pac. 714].)

■ There is no merit in appellant's contention that the court failed to adopt findings to the effect that his radio stories submitted to the plaintiffs under the title of "The Secret City" were not also in violation of the terms of the contract. There is some evidence that one episode was prepared and presented by the defendant under that title. Our attention is called to no evidence indicating that that manuscript complied with the terms of the contract or that it was marketable. The court did find that the only stories which

646

were sold were prepared wholly by the research and the efforts of the plaintiffs, and that they were sold under the title of "The Unbelievable". No episode was sold under the title of "The Secret City". The court did specifically find that no material of value was received from the defendant, and, on the contrary determined that "It is not true that the scripts already produced in the series entitled 'The Secret City', have a marketable value." It is apparent that a more specific finding regarding the use of the title "The Secret City", would necessarily have been adverse to the defendant. Under such circumstances the failure to adopt specific findings upon a particular issue is not reversible error. (*Hulen* v. *Stuart*, 191 Cal. 562, 572 [217 Pac. 750] ; *Norton* v. *Puter*, 138 Cal. App. 253, 260 [32 Pac. (2d) 172].)

▮▮▮ Finally, the appellant contends that the court erred in rescinding the contract without requiring the plaintiffs to restore to him the manuscripts of proposed stories which were prepared by him. The court specifically found that those documents were valueless, because they were not in the form prescribed by the contract; the incidents contained in them were plagiarized, without the consent of the author, from the books of Charles Fort, in violation of the copyright law, and they were not adaptable to a form which would render them merchantable. For that reason the court failed to require the plaintiffs to restore to the defendant those documents.

We are of the opinion the evidence supports the finding of the court that those documents are valueless. We are directed to no evidence that the manuscripts in question have any intrinsic value. Section 1691, subdivision 2 of the Civil Code requires the restoration only of property possessing a value. It has been repeatedly held that where the thing involved in a rescission suit has no value to either of the parties it is not necessary, as a prerequisite to the cancellation of a contract, to restore the property. (*Orton* v. *Privett*, 202 Cal. 754 [262 Pac. 713] ; *McElligott* v. *Freeland*, 139 Cal. App. 143, 159 [33 Pac. (2d) 430] ; 4 Cal. Jur. 767, sec. 9.)

▮▮▮ We have looked in vain among the exhibits on file, which are presumed to include all of the manuscripts involved in this suit, for any document entitled "The Secret City" or for any episode which purports to have been originally prepared by the defendant. But since those original manu-

scripts furnished by the defendant may possess some value to him, although they are valueless for the purpose of marketing them for radio broadcasting, we are of the opinion they should be returned to the defendant.

The judgment is accordingly modified to require the plaintiffs to restore to the defendant all of his manuscripts of proposed episodes for radio broadcasting which may be in their possession or accessible to them. As so modified the judgment is affirmed.

Paulsen, J., *pro tem.*, and Tuttle, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 20, 1940.