[Civ. No. 10508. Second Appellate District, Division One.—June 19, 1936.]

HOOPER C. DUNBAR et al., Appellants, v. A. OSBUN et al., Defendants; FIDELITY AND DEPOSIT COMPANY OF MARYLAND (a Corporation), Respondent.

Haight, Trippet & Syvertson for Appellants.

Joe Crider, C. N. Runkle and W. R. Law for Respondent.

DESMOND, J., *pro tem.*—Appellants, unsuccessful as plaintiffs in an action upon a surety company bond, claim errors by the court in ruling upon points of law and in entering judgment upon findings unsupported by competent evidence. The case at bar was filed in 1934. To consider intelligently the appeal herein, we must refer to another action brought two years previously. On January 23, 1932, Messrs. Osbun, Cox and Brenneman, unit-holders in a trust known as Bell View Oil Syndicate, had filed a suit against the trustees of that organization, charging conspiracy and various derelictions against them, seeking injunctions and praying for the appointment of a receiver to take over and administer all the assets and business of the syndicate. The application for a receiver was acted upon *ex parte*, the plaintiffs in that case posting a bond of $10,000 required by the court, and the receiver qualifying on the same day suit was filed. An inquiry upon a show cause order, as to whether the order appointing the receiver should continue in force until the termination of the action, was decided on February 11, 1932, when the court discharged the receiver and required him to account, at the same time placing the trustees under mandatory instructions in regard to methods of handling the syndicate business, and impounding certain moneys and securities which the trustees had placed in a safe deposit box. On March 25, 1932, the receiver's account, containing various items of expense incurred by him, was approved, with the exception of a single item, by the trial court at a hearing attended by counsel for all parties. An appeal from this order of approval was dismissed by the Supreme Court under date of May 10, 1932, following a dismissal of the action itself in the superior court on May 2, 1932, upon a stipulation entered into by counsel reading as follows:

"In the Superior Court of the State of California in and for the County of Los Angeles. *A. Osbun, R. L. Cox and*

*R. S. Brenneman, Plaintiffs,* v. *Bell View Syndicate, an Unincorporated association, et al., Defendants.* No. 334,121. Stipulation. It is Hereby Stipulated and Agreed that the above entitled action shall be dismissed, each of the parties thereto to pay its and their own costs and disbursements herein, and the clerk of said court is hereby authorized and directed to enter such dismissal.

"It is Hereby Further Stipulated and Agreed that said Superior Court may forthwith make an order releasing all funds and property heretofore impounded in said action.

"Dated this 29th day of April, 1932.

"(Signed) W. R. LAW,

"Attorney for Plaintiffs.

"WALTER F. HAAS,

"Attorney for Defendants heretofore appearing."

The trustees of the Bell View Oil Syndicate, who were sued in the 1932 case, are Messrs. Dunbar, Horton and Morris, plaintiffs and appellants in this case. They sought to recover from Fidelity and Deposit Company of Maryland the sum of $9,462.06 claimed as damages resulting from expense incurred in connection with the receivership business. The undertaking furnished at the institution of the 1932 action was written by respondent, and bound the company "in the sum of Ten Thousand ($10,000.00) Dollars, lawful money of the United States, to the effect that said plaintiffs will pay to the defendants all costs and damages which they may sustain by reason of the appointment of said receiver and the entering by him upon the performance of his duties, if it shall be finally determined that the said plaintiffs were not entitled to said order".

■ Appellants contend, and cite various cases in support of their theory, that since the receiver was discharged upon a hearing after holding office for twenty days, that the liability for all expense arising from the appointment and services of the receiver became fixed upon the respondent under the $10,000 bond. We think it proper to consider in this connection the fact that the court made no order vacating the appointment order, but approved the various items of expense shown in the receiver's account, including one for $500 for the receiver's attorney, and another for $750 for the receiver's own services, minus a deduction of $270, the single item that was disallowed. And more important than the

approval of the account is the fact that the appeal taken from the order of approval was dismissed almost coincidentally with the dismissal of the action itself. This appeal questioned the correctness and propriety of the court's order that the receiver be paid $480 net for his services and his attorney $500, yet the complaint in the present action shows these two items were paid by appellants on the very day dismissal of this case was filed, May 2, 1932. All this gives color and substance to the testimony of Cox, Osbun and Brenneman to the effect that prior to the signing of the stipulation the parties had compromised and settled their differences on a basis that excluded future liability on the part of anyone concerned. Mr. Cox testified that "there were to be no kick-backs against anybody, and no claims against the bonding company or stockholders or unit holders or anybody else"; Mr. Brenneman, "Then there was a matter of—yes, each side should pay all of its own expenses, and there would be no further contention"; Mr. Osbun, "The substance was that he would settle on certain terms . . . of each party paying their portion of the expenses; in other words, they to pay their costs, and we to pay ours, and that there would be no kick-backs." There was other testimony of a similar nature upon which the court could readily conclude that the payment by these defendants of the two items mentioned constituted a recognition on their part of their obligation under the agreement to pay. as their own expenses these and the other items sued for. We note in the record some testimony tending to contradict the unit-holders, but upon appeal we have no power, even if we had the inclination, to disturb findings made by the court upon conflicting evidence. (*Stewart* v. *Crowley,* 213 Cal. 694 [3 Pac. (2d) 562].)

 Counsel for appellants believe that the court erred in receiving testimony of conversations had between the parties and their attorneys before the stipulation for dismissal was signed, claiming that this was an attempt to alter or enlarge by parol testimony the terms of a written instrument, to wit, the dismissal. We do not so understand it. A situation of strife existed between the parties. They decided to terminate this condition of affairs according to certain terms which they agreed upon. Concerning these terms, the court took testimony and found that the respondent was exonerated

by them. This important agreement having been reached, the dismissal followed as a matter of course.

■ Appellants feel aggrieved by the failure of the trial court to grant a new trial on affidavits filed by two witnesses, who would have contradicted the testimony of Mr. Cox or Mr. Osbun, or both. But such testimony, if received, would only intensify the conflict in the evidence, and the court was within its rights in deciding not to receive it.

The judgment is affirmed. The appeal from the order denying motion for a new trial, not being authorized in a civil action, is ordered dismissed.

York, Acting P. J., and Doran, J., concurred.