[Civ. No. 16459. Second Dist., Div. Two. Oct. 26, 1948.]

RIVERSIDE RANCHO CORPORATION et al., Respondents, v. E. STEWART COWAN, Appellant.

198

Steiner A. Larsen and H. Spencer St. Clair for Appellant.

Nathan Newby, Jr., and Newby, Holder & Newby for Respondents.

WILSON, J.—This action is based on alleged fraud and misrepresentation of defendant in the sale to plaintiffs of a tract of real property in Riverside County. The price agreed upon was $110 per acre for arable land and $1.00 per acre for hill land. It is charged that defendant represented that the tract contained 500 acres of hill land, whereas in fact there were approximately 900 acres of such land. A part of the purchase price was paid in cash, the balance being represented by a promissory note secured by a second trust deed for $68,433.99, and the assuming by the purchasers of first trust deeds covering respectively the east and west parts of the tract. The court found in favor of plaintiffs and by its judgment ordered the sum of $44,253.40 to be credited on the second trust deed note. The latter amount represents the difference, computed at the agreed price for the arable and hill land, respectively, between the acreages of each class of land represented by the defendant to be in the tract and the acreages of each class actually conveyed. The method of computation is not questioned. Defendant has appealed from the judgment.

The complaint contains the conventional allegations necessary in complaints for fraud, including an allegation that

defendant knew she was misrepresenting the number of acres of hill land. It is not necessary to state the evidence in detail, especially that relating to the negotiations leading to the sale, since it fully supports the findings. However, it should be noted that when the previous owners sold the property to defendant, almost simultaneously with defendant's sale to plaintiffs, the contract recited that the tract contained 900 acres of hill land, and when the individual plaintiffs and representatives of the corporate plaintiff were inspecting the property with a view to purchasing it defendant told them that 500 acres were hills. The court made a finding in accordance with such evidence.

Defendant maintains that the judgment creates a new contract between the parties and enables plaintiffs "to circumvent the measure of damages provided by statute for a fraud action" and to obtain a kind of relief given only in other types of actions distinguishable from this case. Such contention must be rejected. The judgment does not create a new contract nor, by ordering a credit on the note, does it create a new note for the difference between the principal of the note and the amount remaining after making the deduction. The action was not brought to reform the contract on the ground of mistake, or on any other ground on which a contract may be reformed, hence the argument and the citations concerning the power of the court in such a case need not be considered. It is an action based (1) on the fraud and misrepresentation of defendant whereby she obtained cash and a note secured by a trust deed and (2) on partial failure of consideration.

Defendant did not sell the land to plaintiffs as an entire tract for a lump sum. The contract specifically called for a certain number of arable acres and for a certain number of acres of hill land at an agreed amount per acre for each respectively. The court found that defendant sold by the acre and plaintiffs purchased by the acre and that the total purchase price was to be determined by the number of acres in each classification. The court found as a fact that defendant knowingly misrepresented the number of acres of hill land as alleged by plaintiffs. In that manner she induced plaintiffs to pay and to become obligated to pay a greater consideration for the property than they would have agreed to pay if she had not misstated the fact. To the extent of the excess amount the promissory note was without consideration and plaintiffs are entitled to credit therefor. If the consideration had been

paid in full plaintiffs, on the evidence and the findings contained in the record, would have been entitled to a judgment against defendant for the same amount adjudged to be credited on the note. The contract remains the same after the judgment as before, to wit, a promise to pay, but the amount plaintiffs are required to pay in satisfaction thereof is the true amount which they would have agreed to pay save for defendant's misrepresentation.

This case does not concern a contract which through fraud or mistake fails to express the real intention of the parties, nor is it a case wherein a written contract is sought to be modified by parol evidence. Fraud is alleged, proved and found by the court, not in the execution of the contract but in the inducement consisting in defendant's misstatements, known by her to be untrue when she made them. In defendant's brief she in effect admits the misrepresentation as to the number of acres respectively of arable and hill land. Any other position would be futile in view of the findings which have abundant support in the evidence. She had previously agreed with the persons from whom she was purchasing that she was receiving from them approximately 900 acres of hill land for which she was paying $1.00 per acre and at the same time represented to plaintiffs that there were only 500 acres of such land. She could not assert mistake or inadvertence on her part. She is not in a position to argue that a court of equity is without power to do justice under the conditions here existing.

The contract brought into question by the complaint is not the promissory note on which credit was ordered to be made but is the original contract whereby plaintiffs agreed to purchase the land, following which the deeds, promissory notes and trust deeds were executed by the respective parties. That contract shows that the parties were contracting on the basis of acreage of two classes and the court so found. Since the true consideration agreed upon and the method of arriving at it are issues vital to the case they may be shown by parol evidence. (*Field* v. *Austin*, 131 Cal. 379, 382-3 [63 P. 692]; *Wholesalers Bd. of Adjusters* v. *Norton*, 13 Cal.App.2d 663, 666 [57 P.2d 552].) Under the pleadings, the evidence and the findings the court, with its broad jurisdiction in equity, was empowered to do exact justice to the parties and to enter a judgment that would fairly meet the situation. The court's equitable powers will expand to cope with unusual conditions. (*Bechtel* v. *Wier*, 152 Cal. 443, 446 [93 P.

75, 15 L.R.A.N.S. 549]; *Wuest* v. *Wuest,* 53 Cal.App.2d 339, 346 [127 P.2d 934].) If, instead of ordering a credit on the note, the court had ordered a money judgment for damages the result would have been the same, since the amount of the judgment would have been offset against the portion of the note remaining unpaid.

■ Defendant contends that after she entered into the original contract with the corporate plaintiff she made a new contract with one of the individual plaintiffs. This was only a modification of the original contract since the individual was an officer of and acting in behalf of the corporation with its consent. Furthermore, that contract, as well as a letter signed by defendant, provided, as did the first agreement, that the purchase price was to be computed according to the respective arable and hill acreages at the same prices set forth in the original agreement.

■ When land of an undetermined area is sold at an agreed price per acre for the number of acres conveyed, the purchaser is bound to pay only for the amount of land included within the tract described at the agreed price per acre, and when he has done so his debt for the purchase money is discharged; and even if it is a sale in gross the seller cannot recover purchase money for any part of the land of which he is unable to give possession; as to such part there is a failure of consideration of the mortgage, equivalent to a satisfaction *pro tanto.* (*Cords* v. *Goodwin,* 173 Cal. 61, 67 [159 P. 138]; *McCombs* v. *Church,* 180 Cal. 233, 236 [180 P. 535]; *Miller* v. *Moore,* 45 Cal.App. 283, 285-6 [187 P. 763].)

■ Plaintiffs were entitled to rely on defendant's representations as to the arable and hill acreages. The land had not been surveyed by the former owners although it had been in the possession of their family since 1890. They sold it to defendant on the basis of 900 acres of hill land and she in turn represented to plaintiffs that the tract contained only 500 acres of such land. Plaintiffs were justified in accepting defendant's statements as true because (a) they were entirely without knowledge on the subject (*Davis* v. *Butler,* 154 Cal. 623, 627 [98 P. 1047]; *Scott* v. *Delta L. & W. Co.,* 57 Cal.App. 320, 324 [207 P. 389]; *Wolfe* v. *Severns,* 109 Cal.App. 476, 488 [293 P. 156]), (b) they are not shown to have been familiar with measurements of large areas or to have been versed in topography, and (c) they had been given no reason to doubt defendant's statements. (*Shearer* v. *Cooper,* 21 Cal. 2d 695, 702, 705 [134 P.2d 764]; *Denson* v. *Pressey,* 13 Cal.

App.2d 472, 476-7 [57 P.2d 522] ; *Younis* v. *Hart,* 59 Cal.App.
2d 99, 104-5 [138 P.2d 323].)

 It is a strange defense to rely on other misrepresenta-
tions in an effort to avoid the one most strongly urged by
plaintiffs. Nevertheless defendant refers in her brief to evi-
dence of other false representations made by her, the untruth
of which plaintiffs are asserted to have discovered prior to the
closing of this transaction : (1) that a pump house was on the
ranch, when in fact it was not; (2) that she had owned the
property for a year prior to the negotiations with plaintiffs;
(3) that it was necessary to make a down payment of $40,000
to the owners; (4) that she was making no profit on the
transaction except possibly a bonus of $5,000. It may be ad-
mitted that only the first, if any, of such statements would
justify a judgment in favor of plaintiffs if they had relied
thereon for relief in this action. Defendant maintains that
the discovery of the falsity of these representations put plain-
tiffs on their guard and that they therefore had no right to
rely on her representations as to the acreage. Such facts do
not negate plaintiffs' right to credit for the amount of the
purchase price for which there was no consideration. Even
though the misrepresentations were made as now practically
admitted by defendant, plaintiffs should not be compelled to
pay for land which they did not receive. Furthermore, the
falsity of the representations was not discovered until after the
contract of sale had been signed. Conceding that defendant's
contention would be applicable if the sale had been in gross, a
point which we do not find it necessary to decide, yet, since
the sale was at an agreed price per acre for a stated number of
acres and the hill acreage was misrepresented, there is a
failure of consideration which entitles plaintiffs to recover.

 Moreover, when plaintiffs attempted to arrive at the
number of acres by scaling a map defendant warned that
the map was inaccurate and the acreage could not be de-
termined in that manner. She also cautioned plaintiffs not to
see or talk to the owners from whom she was purchasing.
When investigation is prevented by a vendor the purchaser
is entitled to rely on the vendor's statements. (*Wainscott*
v. *Occidental B. & L. Ass'n,* 98 Cal. 253, 258 [33 P. 88] ; *Vah
Dah Dunshee* v. *Boadway,* 119 Cal.App. 678, 686 [7 P.2d
325].) The court made a finding, which is sustained by the
evidence, that it was impossible to have ascertained the
number of acres of arable or hill land by inspection thereof
or by scaling the maps. It was also found that defendant's

warning that the maps she furnished were misleading and could not be relied on and that it was impossible to secure accurate results by scaling, caused plaintiffs to desist from further efforts to compute the acreage.

The subsequent discovery by plaintiffs of defendant's prior misrepresentations as to matters other than the acreage did not require them to abandon a contract previously entered into nor does it foreclose them of their right to recover or to have credit for the portion of the purchase price for which there was no consideration.

This case is not comparable to those relied on by defendant —one in which it was held that the purchaser of a house and garage who personally inspected the buildings on several occasions before completing the transaction had an opportunity of learning the facts and could not rely on representations as to their condition (*Carpenter* v. *Hamilton*, 18 Cal.App.2d 69 [62 P.2d 1397]); another where the purchaser inspected a 40-acre tract and made inquiries of a third person as to how much of the land was irrigable. (*Hackleman* v. *Lyman*, 50 Cal.App. 323 [195 P. 263].) The tract here in question contained more than 3,000 acres and by mere inspection by an inexperienced person the number of acres of each class of land could not be ascertained. Obviously *Board of Commissioners* v. *Younger*, 29 Cal. 172, affords no comfort to defendant. In that case land was conveyed by metes and bounds definitely describing the property, after which description there were added the words "containing about seventy-two acres." The plaintiff vendor based the action on a miscalling of the number of acres. The court held that the quoted words are indeterminate and uncertain, are not of the essence of the contract, and that insofar as quantity is concerned reliance must be placed entirely on the description by metes and bounds. Furthermore, said the court, plaintiffs as owners had the means of ascertaining the true area of the property and any loss sustained by them was attributable to their own negligence and laches.

Defendant's contention that there is no evidence to sustain the finding that the tract contained 2,119.06 acres of arable land and 900 acres of hill land is not supported by the record. One of the former owners testified there were approximately 2,118 acres of arable land and approximately 890 acres of hill land; after he and his brother had made measurements and calculations they agreed there would be conveyed to defendant 2,119.06 acres of arable land and 900 acres of

hill land and it should be so recited in their contract of sale, and this was done. While this method of calculation does not approach the standard of accuracy that would be required of an engineer, the evidence was received without objection and the court accepted it. ▆▆▆ Since there was no objection to the evidence and it tended to prove the issues the trial court was justified in considering it and basing its findings thereon even though it may have been incompetent. (*West Coast L. Ins. Co.* v. *Crawford,* 58 Cal.App.2d 771, 787-8 [138 P.2d 384]; *Holzer* v. *Read,* 216 Cal. 119, 122-3 [13 P.2d 697].) Defendant relies on the evidence of a civil engineer called as a defense witness who made estimates from maps that had been introduced in evidence and expressed the opinion that there were 2,279 acres of farm land and 830 acres of hill land. Since he made no survey of the property and his evidence was based on calculations derived from the maps it was of no greater strength than that of the former owners. His estimates of the respective acreages were so slightly different from the number claimed by plaintiffs that it scarcely creates a conflict. The court resolved the conflict, if any, by finding in accordance with the evidence of the former owners. In such case a reviewing court cannot disturb or disregard the finding.

▆▆▆ Defendant admitted that in her contract to purchase from the former owners the hill land was estimated at approximately 900 acres, but as evidence of uncertainty of the exact acreage she points to a provision in the contract for an adjustment of the price if there proved to be a shortage or overage of acres. The force of this argument fails completely when it is noted that there is no evidence in the record that any such adjustment was ever made or that she even requested it. Since she accepted the property on the basis of 900 acres of hill land she is estopped to dispute the facts on which plaintiffs base their action and on which the judgment rests.

▆▆▆ Defendant asserts that the finding that the second escrow instructions merely modified the first instructions is not supported by the evidence. The first agreement was between the corporate plaintiff and defendant and was signed January 15, 1946, followed by escrow instructions dated January 25. On March 25, escrow instructions between plaintiff Serge Besoyan individually and defendant were signed. Defendant contends that the latter constituted a new contract and was not a modification of the escrow of January 25. This contention is without foundation. The evidence shows and the court found that the instruction of March 25 was not a new

contract; that the instructions of January 25 were never canceled or modified except as to the amount of the down payment and except that the corporation consented to receive title from Besoyan, provided the transfer was made without any additional consideration, and that the corporation would assume the encumbrances required to be assumed in order to consummate the purchase from defendant; that the corporation never consented to the substitution of Besoyan in his individual capacity as the purchaser of the property in lieu of the corporation; that the contract of January 15 was not canceled or declared null and void, and a cancellation was not accepted by the corporation; that Besoyan at all times after January 15 intended to secure the vesting of title to the land in plaintiff corporation; that he was an officer of the corporation; that the corporation consented to the conveyance to Besoyan only on the proviso that the property would immediately be transferred to it on the conditions above stated.

A modification of a contract can be made only with the consent of all parties to it. The corporation did not consent to a cancellation of the contract. It did consent to a modification of the escrow instructions of January 25, and since the escrow instructions of March 25 were made only on the conditions above set forth the latter instructions constituted only a modification of the former. The second escrow instructions were entered into by Besoyan, an officer of the corporation, for its benefit and with its consent and did not cancel the first instructions or create a new contract. Defendant is presumed to know the law, hence she knew that as an officer of the corporation Besoyan could not have negotiated in his own behalf without full disclosure to and consent of the corporation. Furthermore, since defendant completed the escrow and conveyed the property to the corporation through Besoyan she waived the question now raised by her and waived all defaults under the contract of January 15 and the escrow of January 25 which she attempted to cancel because of some alleged default of the corporation under that escrow.

Defendant complains that the court erred in ordering the incorporation in the second trust deed of the release clause hereinafter referred to. For the purpose of the transaction the land was designated by the parties in the escrow instructions and in other documents as the "east tract" and the "west tract." The court found that the escrow instructions provided that the second trust deed which defendant

was accepting as security for a part of the purchase price should cover only the west tract and that the escrow agent violated the instructions in that such trust deed included the east tract as well as the west tract; that it was the intention of the parties that the east tract might be used in financing the development of the property to the mutual advantage of the seller as well as of the buyer; that by mistake of plaintiff Besoyan he failed to observe that the east tract was included in the second trust deed when it was executed; that notwithstanding such violation of the escrow instructions plaintiffs, in open court during the trial, offered to waive the reformation of the trust deed by deleting therefrom the description of the east tract, provided defendant and her successors in interest were required by the judgment to release any land described in the second trust deed upon the same terms and conditions as contained in the two first trust deeds that had been executed by defendant to secure an amount owing and unpaid by her to the persons from whom she purchased the land, which release payments were to be credited on the first trust deeds, plus payment to the holder of the second trust deed of the sum of $15 per acre for all arable or farm land so released. The court found that plaintiffs' offer is equitable to all parties and should be incorporated in the judgment.

The court did not err in making such findings or in including the terms thereof in the judgment. By the contract of January 15, 1946, the east tract was not to be encumbered by the second trust deed, and the west tract could be released from such trust deed by the payment of $10 per acre. The violation of the escrow instructions and the basis for the finding is supported by the allegations in the amended complaint to conform to the proof, which the court permitted to be filed, as well as by the evidence. The court was authorized to grant plaintiff any relief consistent with the case and embraced within the issues. (Code Civ. Proc., § 580.) The court exercised its jurisdiction to render a judgment consonant with the facts shown by the evidence, and since the relief is less than that to which plaintiffs are entitled, defendant cannot complain.

 The judgment is not prejudicial in the respect above discussed for the reason that the release clause decreed by the court does not redound to defendant's injury. If plaintiffs should exercise the right to demand releases of the property in accordance with the judgment they would be required to pay far more for the release of the arable land than the

amount adjudged to be due to defendant on the second trust deed after crediting thereon the amount required by the judgment. The second trust deed secured a note for $68,443.99. The court adjudged that $44,253.40 be credited thereon, leaving a balance owing of $24,190.59. Releases of 2,119.06 acres, the amount of arable land found by the court to have been included in the tract, at the rate of $15 per acre would require plaintiffs to pay $31,785.90, or $7,595.31 in excess of the amount remaining unpaid on the second trust deed note after the credit ordered by the court. Even if the finding and judgment were deemed to be erroneous in the respect above discussed the error would not be prejudicial to defendant for the reasons stated and therefore not a ground for reversal. (*Petroleum Midway Co., Ltd.* v. *Moynier*, 205 Cal. 733, 744 [272 P. 740]; *Monroe* v. *Owens*, 76 Cal.App.2d 23, 27 [172 P.2d 110]; *DeArman* v. *Connelly*, 134 Cal.App. 173, 181 [25 P.2d 24].)

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.